## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Senior Services Associates, Inc. ("SSAI") and Bette Schoenholtz ("Schoenholtz"), and Linda A. Orphal and her heirs, executors, administrators, successors, and assigns (collectively "Employee") (together with SSAI and Schoenholtz, "the Parties"), enter into the following Settlement Agreement and General Release ("Agreement"):

WHEREAS, on April 25, 2017, Employee filed a Complaint in the United States District Court for the Northern District of Illinois, Eastern Division (the "Court") against SSAI and Schoenholtz, Case No. 17-CV-3104, alleging violations of the Fair Labor Standards Act ("FLSA") and the Portal-to-Portal Act, the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA") and through which Employee sought to recover damages on behalf of herself and on behalf of a class and collective comprised of other individuals allegedly similarly situated to her (the "Lawsuit");

WHEREAS, SSAI and Schoenholtz deny that Employee is owed any amounts under the FLSA, under the Portal-to-Pay Act, under the IMWL, and under the IWPCA, and further deny that Employee could assert claims on behalf of a class or collective;

WHEREAS, the Parties to this Agreement desire to fully and finally resolve all claims that Employee has or may have against SSAI and Schoenholtz;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Consideration.** In consideration for Employee's promises under this Agreement, and complying with its terms, SSAI agrees to pay Employee and her attorney the total amount of Thirty-five Thousand Dollars and No Cents ($35,000.00) to be distributed as follows:

    (a) A check made payable to Employee in the gross amount of Two Thousand, Five Hundred Dollars and No Cents ($2,500.00), less normal and ordinary payroll deductions required by law, to be reported on an IRS Form W-2 ("Back Wages");

    (b) A second check made payable to Employee in the amount of Two Thousand, Five Hundred Dollars and No Cents ($2,500.00), without deductions, to be reported on a 1099 Misc. Form ("Liquidated Damages"); and

    (c) A check for Employee's attorney's fees, costs and expenses payable to Harrison Law Office, P.C., 684 S. Eastwood Drive Woodstock, IL 60098, in the amount of Thirty Thousand Dollars and No Cents ($30,000.00) to be reported on IRS Form 1099s issued to Employee and her attorney in accordance with IRS regulations ("Attorney's Fees"). The consideration set forth above shall be provided to Harrison Law Office, P.C. within five (5) business days after Employee delivers all of the following documents to counsel for SSAI:

    (1) a copy of this Agreement executed by Employee and not revoked by Employee;

(2) a completed W-9 form for Employee's attorneys; and

(3) an order entered by the Court approving this Agreement in accordance with Paragraph 6 below.

Notwithstanding the above, no payment shall be made before the seven-day revocation period ends.

SSAI agrees and understands that it is responsible for paying SSAI's share of any taxes arising out of the consideration described above. SSAI makes no representations concerning the taxability of the consideration set forth above, and Employee agrees that she has not relied on such representations. SSAI makes no representations or warranties with respect to the tax consequences of the payment of any sums to Employee under the terms of this Agreement. Employee agrees and understands that she is responsible for payment of local, state and/or federal taxes on the sums paid hereunder by SSAI and any penalties or assessments thereon. Employee shall fully indemnify SSAI for any taxes, penalties or interest assessed against SSAI for any tax obligations owed by Employee related to this payment, and for any costs or attorneys' fees incurred by SSAI to enforce this indemnification agreement with Employee.

2. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that she and her attorney would not receive the monies and/or benefits specified in Paragraph 1 above, except for her execution of this Agreement and the fulfillment of the promises contained herein.

3. **General Release, Claims Not Released and Related Provisions.**

a. **General Release of All Claims**. Employee knowingly and voluntarily releases and forever discharges Schoenholtz and SSAI, SSAI's parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former owners, shareholders, employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and SSAI's employee benefit plans and programs and SSAI's administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against the Releasees as of the date of execution of this Agreement, including, but not limited to any claims related to Employee's employment or separation of employment from SSAI and any claims based on the following:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Illinois Human Rights Act;
- 820 ILCS 305/4(h) of the Illinois Workers' Compensation Act;
- Illinois common law regarding retaliation or discrimination for filing a workers' compensation claim;
- Illinois Equal Pay Act;
- Illinois School Visitation Rights Act;
- Illinois AIDS Confidentiality Act;
- Illinois Right to Privacy in the Workplace Act;
- Illinois Genetic Information Privacy Act;
- Illinois Wage Payment and Collection Act;
- Illinois Minimum Wage Law;
- Illinois One Day Rest in Seven Act;
- Illinois Eight Hour Work Day Act;
- Illinois Health and Safety Act;
- Illinois Whistleblower Act;
- Illinois Victims' Economic Safety and Security Act;
- Illinois Worker Adjustment and Retraining Notification Act;
- Illinois Personnel Records Review Act;
- Illinois Criminal Identification Act;
- Illinois Voter Leave Act;
- Illinois Family Military Leave Act;
- Illinois Joint Agency Rules of Sex Discrimination;
- Illinois Joint Agency Rules on National Origin Discrimination;
- Illinois Human Rights Commission Rules on Handicap Discrimination;
- Illinois Human Rights Commission Rules on Unfavorable Military Discharge Discrimination;
- Smoke Free Illinois Act;
- Illinois Blood Donation Leave Act;
- Illinois Civil Patrol Leave Law
- Illinois Jury Duty Leave Law
- Illinois Official Meetings Leave Law
- Illinois Witness Duty Leave Law
- Illinois Working Mothers in the Workplace Act
- Illinois Common Law Claims for Unlawful Retaliatory Discharge in Violation of Public Policy;
- Illinois Employee Sick Leave Act;
- Illinois Child Bereavement Leave Act;
- Illinois Biometric Information Privacy Act;
- Cook County Human Rights Ordinance;
- Cook County Earned Sick Leave Ordinance;
- Chicago Human Rights Ordinance, as amended;

- Chicago Earned Sick Leave Ordinance;
- any other federal, state or local law, rule, regulation, or ordinance
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

   **b.** **Claims Not Released.** Employee is not waiving any rights she may have to: (a) her own vested accrued employee benefits under SSAI's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; and/or (d) claims to enforce this Agreement; and/or (e) challenge the validity of this Agreement, and/or (f) claims arising after the execution of this Agreement.

   **c.** **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC, etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

**4.** **Acknowledgments and Affirmations**. Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim, complaint, or action against SSAI and Schoenholtz in any forum or form other than the Lawsuit.

   Employee also affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or state or local leave or disability accommodation laws.

   Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Schoenholtz or SSAI or SSAI's officers, including any allegations of fraud.

   Employee further affirms that Employee has no known workplace injuries or occupational diseases.

   Employee also affirms that Employee has not divulged any proprietary or confidential information of SSAI and will continue to maintain the confidentiality of such information consistent with SSAI's policies and Employee's agreement(s) with SSAI and/or common law. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a

lawsuit for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

Employee shall not apply in the future for employment with SSAI because of, among other things, irreconcilable differences with SSAI. Employee acknowledges and agrees that this agreement not to seek future employment with SSAI is purely contractual and is in no way involuntary, discriminatory, or retaliatory.

Employee affirms that all of SSAI's decisions regarding Employee's pay and benefits through Employee's separation date were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

Employee agrees to refrain from making defamatory or maliciously disparaging statements, oral or written, about Employer, or its officers, directors, managers or employees, including but not limited to communications on social media websites such as Facebook, Twitter or LinkedIn, on blogs, by text or email or other electronic means, except for truthful statements required by legal process issued by a court or tribunal of competent jurisdiction.

Bette Schoenholtz agrees that she will refrain from making defamatory or maliciously disparaging statements, oral or written, about Employee, including but not limited to communications on social media websites such as Facebook, Twitter or LinkedIn, on blogs, by text or email or other electronic means, except for truthful statements required by legal process issued by a court or tribunal of competent jurisdiction.

In addition, Employer will instruct the current members of its Board of Directors to refrain from making defamatory or maliciously disparaging statements, oral or written, about Employee, including but not limited to communications on social media websites such as Facebook, Twitter or LinkedIn, on blogs, by text or email or other electronic means, except for truthful statements required by legal process issued by a court or tribunal of competent jurisdiction.

Employee agrees to refer any prospective employers exclusively to Lisa Small, Chief Financial Officer, or to her designee or successor. Employer agrees it will provide such prospective employers with a neutral reference, providing only Employee's position held and dates of employment, stating that such information is being provided consistent with Employer's policy.

Employee acknowledges that she is solely responsible for any liens made in connection with any services performed on her behalf by any attorney, consultant, health care providers or other third parties.

Employee further acknowledges and agrees that she will indemnify the Releasees for any and all costs any of them incur as a result of any claims made by attorneys, consultants, health care providers or other third parties to recover monies from the amount payable to Employee under this Agreement.

Employee became eligible for and enrolled in Medicare on ████████ ████ Employee affirms her Health Insurance Claim Number (HICN) is ████ Employee affirms that her claims against Employer do not involve any illness, injury, incident, or accident in which medical expenses were, or are expected to be, incurred. Accordingly, Employee affirms that Medicare has no interest in the payment under this settlement. Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Employee under this settlement, Employee agrees to indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Employee. Employee agrees to reasonably cooperate with Releasees upon request with respect to (i) any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, and (ii) any claim that the CMS may make and for which Employee is required to indemnify Releasees under this paragraph. Furthermore, Employee agrees to waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

5. **Limited Disclosure and Return of Property.** Employee agrees not to disclose any information regarding the existence or substance of this Agreement, except to Employee's tax advisor, an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement and/or to any court, or federal, state or local government agency.

Employee affirms that Employee has returned all of SSAI's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at SSAI's premises and that SSAI is not in possession of any of Employee's property.

6. **Submission to Court for Purposes of Approval of Settlement**. The Parties intend for Employee to waive any and all claims Employee may have against the Releasees from the beginning of time up to and including the date on which Employee signs this Agreement, including claims under the FLSA and the Portal-to-Portal Act, IMWL, and IWPCA and therefore desire that this Agreement be approved by the Court. Accordingly, the Parties agree to the following:

(a) Following execution of this Agreement, Employee will cause her attorney to file a Joint Motion for Approval of Settlement and Dismissal of Claims ("Joint Motion");

(b) Drafts of the Joint Motion and a proposed order are attached to this Agreement as Attachments A and B and incorporated herein;

(c) In the event the Agreement is not approved by the Court, this Agreement shall be null and void, no payments shall be made pursuant to the Agreement, and Employee's Lawsuit shall resume.

7. **Governing Law and Interpretation.** This Agreement shall be governed in accordance with the laws of the State of Illinois without regard to its conflict of laws provision. In the event

of a breach of any provision of this Agreement, any party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

10. **Costs and Attorney's Fees**. Except to the extent stated in Paragraph 1 of the Agreement, each Party to the Agreement shall bear their or its own costs and attorney's fees associated with this dispute, as well as the negotiation and preparation of the Agreement.

11. **Fair Meaning**. The language of all parts of this Agreement shall in all cases be construed as a whole according to fair meaning, and not strictly for or against any of the Parties, regardless of who drafted it.

12. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties, and fully supersedes any prior agreements, understandings or obligations between the Parties pertaining to the subjects addressed herein. Employee acknowledges that she has not relied on any representations, promises, or agreements of any kind in connection with her decision to accept this Agreement, except for those set forth in this Agreement.

13. **Assignment of Claims**. Employee hereby represents and warrants that she has not assigned or transferred or purported to assign or transfer to anyone any claim, action or cause of action based upon, arising out of, or connected in any way with any of the matters released herein.

14. **Signatures.** This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO THE SIGNING OF THIS AGREEMENT.**

**EMPLOYEE MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS AGREEMENT. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO BETTE SCHOENHOLTZ AT SENIOR SERVICES ASSOCIATES, INC., 101 S. GROVE AVENUE, ELGIN, ILLINOIS 60120 AND STATE, "I HEREBY**

REVOKE MY ACCEPTANCE OF OUR AGREEMENT." THE REVOCATION MUST BE PERSONALLY DELIVERED TO BETTE SCHOENHOLTZ, OR MAILED TO BETTE SCHOENHOLTZ AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

**[Remainder of page intentionally left blank]**

[Remainder of page intentionally left blank]

The parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**LINDA A. ORPHAL**

By: _Linda A. Orphal_
       Linda A. Orphal

Date: _4-13-18_

**SENIOR SERVICES ASSOCIATES, INC.**

By: _Bette Schoenholtz_
Name: _Bette Schoenholtz_
Title: _Executive Director_
Date: _4/12/18_

**BETTE SCHOENHOLTZ**

By: _Bette Schoenholtz_
       Bette Schoenholtz

Date: _4/12/18_